KENDRICK COAL & DOCK CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6806.   Promulgated April 29, 1927.

Profit realized from the exchange of assets for shares of stock in a newly organized corporation determined.

*W. Yale Smiley, Esq.,* for the petitioner.
*Thomas P. Dudley, Jr., Esq.,* for the respondent.

This is a proceeding for the redetermination of a deficiency in income and profits tax for the year 1920 in the amount of $18,804.01. The petitioner alleges error on the part of the Commissioner in adding to its net income for 1920, $50,000 profit on the sale of certain assets.

FINDINGS OF FACT.

The petitioner is a Minnesota corporation engaged in the wholesale coal business. It was organized June 24, 1916, with a capital stock of $50,000, divided into 500 shares of a par value of $100 each. Its entire capital stock was issued, with the exception of qualifying shares of directors, to Edward S. Kendrick, Jr. Kendrick had been engaged in the coal business for a number of years prior to the organization of the petitioner, first in Philadelphia, then in Cincinnati, and then in Minneapolis. He came to Minneapolis in 1911 and became associated with the Berwind Fuel Co. as its sales manager for the northwestern territory adjacent to Minneapolis. For about five years subsequent and until May, 1916, Kendrick remained in this position. During this period he became acquainted with industries in the Northwest which were large purchasers of coal, and also with various coal companies which sold coal in that territory. In May, 1916, he severed his connection with the Berwind Fuel Co. and went into the coal-jobbing business individually under the name of the Kendrick Coal & Dock Co.

Kendrick continued his individual business for a period of about two months when the petitioner was incorporated. During this

period he secured numerous orders for the sale of coal, including both orders for single shipments and orders for shipments extending over a period of several months. None of the orders which were on hand and unfilled in June, 1916, provided for shipments extending beyond one year. On the organization of the petitioner, Kendrick turned over his individual coal business, including all of the unfilled orders on hand, for the entire capital stock of the petitioner.

The books of account as of December 31, 1917, show assets and liabilities as follows:

| ASSETS. | | LIABILITIES. | |
|---|---|---|---|
| Cash | $22, 504. 45 | Accounts payable | $48, 163. 82 |
| Accounts receivable | 77, 582. 75 | Accrued expenses | 5, 083. 78 |
| Liberty bonds | 12, 000. 00 | Surplus | 60, 865. 35 |
| Corporate stocks | 2, 025. 75 | | |
| | | | 114, 112. 95 |
| Total | 114, 112. 95 | | |

In 1918 Kendrick was mustered into the military service of the United States and was not mustered out until April, 1919. He returned to Minneapolis and continued the conduct of his coal business.

Owing to keen competition, Kendrick saw that if his business was to become a large business, it would be necessary for the corporation to acquire a dock at Duluth and for it to make arrangements whereby it could get coal by water transportation from the eastern coal fields. Prior to June, 1920, Kendrick had been negotiating with certain eastern coal interests for the enlargement of his business. These negotiations were carried on with A. W. Thompson of the Wilson Transit Co. and F. E. Taplin of the Cleveland & Western Coal Co. In May, 1920, at a special meeting of the stockholders of the petitioner, its officers were authorized to enter into an agreement with the above-named individuals under the terms of which the petitioner was to agree in consideration of $50,000 of the stock of the Inland Coal & Dock Co. (corporation to be formed) to convey to Thompson and Taplin acting for and on behalf of such corporation " all the office furniture and fixtures, office supplies and equipment, also the good will and all of the benefits to be derived in the way of profits from the contracts which this corporation has for the purchase or sale of coal, and the contracts themselves, profits in which are estimated at $40,000 by the officers of the company, and it being understood that the purchaser is to assume all liabilities or losses which may arise in connection with said coal contracts." Pursuant to such authorization Kendrick proceeded to Cleveland, Ohio, for the purpose of entering into the agreement referred to. Objection was raised by the attorney for the Inland Coal & Dock Co. to the issuance of any of its capital stock in payment for the assets of

the petitioner above referred to. It was then agreed that the transfer should be made for $50,000 in cash, and that the petitioner should thereupon subscribe for 500 shares without nominal or par value of the common stock of the Inland Coal & Dock Co., to be paid for in cash. This change in the plan of the transaction was agreed to by Kendrick and the petitioner and a resolution in accordance therewith was duly passed by the directors of the petitioner.

The following is the agreement entered into between Taplin and Thompson and the petitioner by E. S. Kendrick as president under date of June 1, 1920:

MEMORANDUM OF AGREEMENT made and entered into this first day of June, 1920, by and between A. W. THOMPSON and F. E. TAPLIN, acting for and on behalf of a corporation to be formed to take over and operate the ISLAND CREEK COAL COMPANY'S dock at Duluth, Minnesota, Parties of the First Part, and KENDRICK COAL & DOCK COMPANY, a corporation of Minneapolis, Minnesota, PARTY of the Second Part.

WITNESSETH:

WHEREAS, a corporation is to be formed under the laws of the State of Ohio to take over and operate the ISLAND CREEK COAL COMPANY'S dock at Duluth, Minnesota; and

WHEREAS, it is desirable that said dock company so to be formed shall have the benefits to be derived from the going organization of Second Party and the good will connected therewith, and also from certain contracts now held by the Second Party, and shall further secure the benefit of the services of E. S. KENDRICK, now President of the Second Party.

Now, THEREFORE, it is agreed as follows:

(1) Parties of the First Part agree to purchase, and Party of the Second Part agrees to sell, all of Second Party's office furniture and fixtures, supplies and equipment, also the Good Will of said Company, and all of the benefits to be derived in the way of profits from the contracts which Second Party has for the purchase or sale of coal, it being understood that said corporation so to be formed shall assume all liabilities or losses to arise in connection with said coal contracts.

(2) In full payment for said property, Party of the Second Part agrees to accept, and Parties of the First Part agree to pay, the sum of Fifty Thousand Dollars ($50,000.00) in cash.

(3) It is understood between the parties that while said coal contracts are not to be assigned or transferred to the new Dock Company, nevertheless, from and after the date hereof, all operations of Second Party in connection with said contracts are for the sole use and benefits or loss, as the case may be of said new Dock company.

(4) Party of the Second Part agrees upon request to execute any and all papers necessary or proper to effect the transfer of the property hereby purchased by Parties of the First Part, it being understood that said transfer shall be made to the corporation before mentioned when duly organized. All physical assets covered by this agreement of purchase and sale shall be transferred free of liens or encumbrances of any sort.

(5) It is understood that it is part of this agreement, supported by the consideration herein named, that the corporation to be formed shall employ the said E. S. KENDRICK as Vice-President in charge of sales and management of the Duluth Coal Dock and of the Northwestern business of the corporation, at

a salary of Fifteen Thousand Dollars ($15,000.00) a year and expenses, said employment to continue so long as said E. S. KENDRICK shall retain his stock ownership in said corporation.

A bill of sale or assignment was then executed by the petitioner, in which it transferred to the Inland Coal & Dock Co. its office furniture and fixtures, good will and all the profits to be derived from certain described contracts of the petitioner for the sale of coal. The contracts were 35 in number, had all been acquired by the petitioner subsequent to January 1, 1920, and were for the sale of 174,850 tons of coal. None of the orders or contracts on hand at that time were included in the orders or contracts transferred by Kendrick to the petitioner upon its organization in 1916. None of the accounts receivable or cash in the treasury of the petitioner were transferred to the Inland Coal & Dock Co. The surplus of the petitioner at the date of transfer was between $60,000 and $70,000.

A check of the Inland Coal & Dock Co. for $50,000 was on June 12, 1920, delivered to the petitioner as the consideration for the transfer. On the same date the petitioner issued its check for $50,000 to the Cleveland & Western Coal Co. which had advanced the original subscription to the stock of the Inland Coal & Dock Co. in payment for 500 shares of the common stock of the last-mentioned company. The checks were passed simultaneously.

The Inland Coal & Dock Co. was organized on June 1, 1920, with an authorized capital stock of 4,000 shares of preferred stock of a par value of $100 per share, and 6,000 shares of common stock of no par value. All of the common stock was subscribed for at $100 per share. The petitioner acquired 500 shares in the manner above described. It also purchased 700 shares, giving its note for $70,000 in payment therefor, $60,000 of the principal being paid as its accounts receivable were collected. E. S. Kendrick, Jr., individually subscribed for 600 shares of the stock at $100 per share. The balance of the common stock was subscribed for by the Cleveland & Western Coal Co. and the Wilson Transit Co. The company immediately acquired the dock of the Island Creek Coal Co. at Duluth. The certificate of the common stock issued provided that the transfer of them was subject to the provisions of the "Code of Regulations" of the company and that the shares of stock were "accepted and held subject to all provisions of the Code of Regulations and to the designations, preferences and voting powers, or restrictions or qualifications thereof, of the preferred stock, which are set forth on the reverse side" of each certificate. None of the common stock of the Inland Coal & Dock Co. has ever been sold and no dividend has ever been paid by the company.

The certificate for 500 shares of common stock acquired by the petitioner with its check for $50,000 bears date of June 12, 1920, and was made out and is in the name of " E. S. Kendrick." This was retained by the petitioner up to December 31, 1920. At some time prior thereto a special meeting of the stockholders of the petitioner was called, a 100 per cent stock dividend was declared (the authorized capital stock having been increased to $200,000) and 3 shares of stock were issued to E. S. Kendrick for $300 in cash. The stockholders then voted to accept the offer of E. S. Kendrick to exchange 500 shares of the capital stock of the petitioner owned by him for the 500 shares of common capital stock of the Inland Coal & Dock Co. owned by it. The exchange was made accordingly. The petitioner returned no income for 1920 from the transaction above described. The Commissioner added $50,000 to gross income and net income for 1920, as the profit therefrom. The deficiencies arise from such adjustments of the petitioner's return.

OPINION.

SMITH: The question presented by this proceeding is the amount of income, if any, realized by the petitioner from the sale or exchange in 1920 of certain assets of the petitioner for $50,000 cash, which the petitioner was obligated to use and did use in the purchase of 500 shares of the common capital stock of the Inland Coal & Dock Co., an Ohio corporation. In its petition, the taxpayer alleges error on the part of the respondent in adding $50,000 to its gross income and net income for 1920 and alleges that "said item of $50,000 constituted and represented certain capital stock which had a tangible value and was exchanged for securities of like amount and for securities of no greater par value, and hence the Commissioner of Internal Revenue erroneously and illegally included said amount in computing the net income of this taxpayer for the calendar year 1920."

It is the contention of the petitoner that the substance of the transaction in 1920 was an exchange by E. S. Kendrick, Jr., of $50,000 par value of the capital stock of the Kendrick Coal & Dock Co. for 500 shares of the common capital stock of the Inland Coal & Dock Co., and that no profit resulted from the transaction. The respondent alleges that the assets sold by the petitioner corporation cost it nothing, and that they were sold for $50,000 cash; consequently, that a profit of $50,000 was realized from the transaction.

The evidence discloses that the transaction was not simply a sale of assets for cash. Negotiations prior to the sale were that the petitioner should sell some of its assets for $50,000 par value of the stock of the Inland Coal & Dock Co. The attorney for that company required that the transaction go through as a cash transaction. This

was effected by an exchange of checks of $50,000 each. The substance of the transaction was the exchange of certain assets of the petitioner corporation for 500 shares of the common capital stock of the Inland Coal & Dock Co. The question is whether the petitioner derived any income from such exchange. The facts that at the close of 1920 the petitioner corporation paid a stock dividend of 100 per cent, sold 3 shares of its capital stock for $300 cash, and exchanged its certificate for 500 shares of common capital stock of the Inland Coal & Dock Co. for 500 shares of its own stock appear to us to be immaterial. They do not change the fundamental character of the transaction whereby the petitioner sold or exchanged certain of its assets for 500 shares of the common stock of the Inland Coal & Dock Co. It is liable to income tax upon the profit, if any, which it realized from such transaction.

The applicable provisions of the Revenue Act of 1918 are sections 202(a) and 202(b), which provide:

SEC. 202. (a) That for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property * * * the basis shall be—

\*          \*          \*          \*          \*          \*          \*

(2) In the case of property acquired on or after that date [March 1, 1913], the cost thereof; * * *

(b) When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any; but when in connection with the reorganization, merger, or consolidation of a corporation a person receives in place of stock or securities owned by him new stock or securities of no greater aggregate par or face value, no gain or loss shall be deemed to occur from the exchange, and the new stock or securities received shall be treated as taking the place of the stock, securities or property exchanged.

Considering first the cost to the petitioner of the assets which it turned over to the Inland Coal & Dock Co., the evidence indicates that all of the contracts assigned to that company had been acquired by the petitioner subsequent to January 1, 1920. So far as appears none of the assets sold, except good will, were paid in to the petitioner for shares of stock upon its organization in 1916. The petitioner acquired certain contracts upon its organization, none of which ran for a period of more than one year. These appear to have been the only assets of value turned over to the petitioner corporation in 1916. Kendrick testified that these contracts were worth $50,000 at the date of organization and that earnings in excess of $50,000 were ascribable to them. These contracts were soon translated into profits and appear upon the balance sheet as surplus at December 31, 1917. They were not capital assets after that date. The business of the Kendrick Coal & Dock Co. had been operated for a period of only

about two months prior to incorporation and there is no evidence that the business had a good will of value at date of incorporation. The profits of the business were ascribable to the personality and capability of Kendrick. But personal qualifications or characteristics of an individual do not constitute good will. *Appeal of Providence Mill Supply Co.*, 2 B. T. A. 791. The only assets turned over to the Inland Coal & Dock Co. in 1920, which may be said to have cost the petitioner anything, were furniture and fixtures, the depreciated cost of which was $2,782.89. The revenue agent's report indicates that the books of account of the petitioner show that the depreciated cost of furniture and fixtures was charged to profit and loss in 1920, and the evidence indicates that such loss was allowed by the respondent in determining the deficiency for the year 1920. Since the respondent has computed the deficiency for 1920 by allowing the deduction from the gross income of $2,782.89, the depreciated cost of the furniture and fixtures, there is no occasion for taking this item into consideration in determining the profit, if any, realized from the transaction whereby the petitioner parted with certain assets for the 500 shares of common capital stock of the Inland Coal & Dock Co.

On the assumption that the substance of the transaction was an exchange of assets for 500 shares of stock, it is necessary to consider the fair market value of such shares at the date of receipt. The petitioner contends that no value may be ascribed to them for the reason that they were not transferable by Kendrick or by the other stockholders. The evidence indicates, however, that the shares were subscribed and paid for in 1920 at the rate of $100 per share. We think that this fact alone establishes their fair market value at $100 per share in 1920. Whether the transaction be regarded as a sale of assets for $50,000 cash, as contended by the respondent, or an exchange of assets for the 500 shares of stock appears to us, therefore, as immaterial. The same result must be reached in either case. We think that the petitioner realized a profit in 1920 from the transaction of $50,000, or of the difference between that amount and the depreciated cost of the furniture and fixtures.

*Judgment will be entered on 15 days' notice, under Rule 50.*

MILLIKEN not participating.